UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SANDRA TAYLOR RN, <br> DIANA SEPEDA RN, <br> NANCY FRIESEN RN, <br><br> Plaintiffs <br><br> v. <br><br> LONE STAR HMA, LP <br> d/b/a DALLAS REGIONAL MEDICAL CENTER, <br><br> Defendant. | § § § § § § § § § § § § § § <br><br> CIVIL ACTION NO. <br> 3:07-CV-1931-M |

## DEFENDANT'S DISCLOSURE OF EXPERT TESTIMONY

Pursuant to Federal Rule of Civil Procedure 26(a)(2) and this Court's Scheduling Order dated February 26, 2008, as modified by the June 26, 2008 agreement of the parties to extend the deadline for responsive designation of experts from June 30, 2008 until August 29, 2008, Defendant discloses that the following persons may be used at trial to present evidence under Rules 702, 703, 704 705 of the Federal Rules of Evidence:

    Linda L. Martin
    3862 Lambert Avenue
    Fort Worth, Texas 76109

Ms. Martin's written report, made in accordance with Rule 26(a)(2)(b), is attached to this disclosure as Exhibit A.

    Mike Birrer
    Angelina LaPenotiere
    Carrington, Coleman, Sloman & Blumental, LLP
    901 Main Street, Suite 5500
    Dallas, TX  75202

Mr. Birrer and/or Ms. LaPenotiere may be called to testify in response to any testimony provided by Plaintiffs regarding their attorneys' fees in this matter.

Respectfully submitted,

/s/ Mike Birrer
Mike Birrer
  State Bar No. 00783662
  mbirrer@ccsb.com
Rachel E. Mascorro
  State Bar No. 24060233
  rmascorro@ccsb.com
CARRINGTON, COLEMAN, SLOMAN
  & BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone: (214) 855-3000
Facsimile: (214) 855-1333

*Attorneys for Defendant Lone Star HMA L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of August, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiffs Sandra Taylor and Diana Sepeda, R.N., Elizabeth L. Higginbotham, Esq., 106 E. 6th Street, Suite 900, Austin, Texas 78701, and counsel for Plaintiff Nancy Friesen, Maria Wormington, Wormington Law Group, 207 East Lamar Street, McKinney, Texas 75069.

/s/ **Mike Birrer**

August 28, 2008
To:   Mrs. Diane Sumoski, Mr. Mike Birrer, and Ms. Rachel Mascorro
      Carrington, Coleman, Sloman, & Blumenthal, L.L.P.
From: Linda Martin RN, MSN, CFNP
Re:   Taylor, et al. vs. Lone Star HMA
      Civil Action #3:207-CV-1931-M

---

Dear Sirs,

At your request, I have reviewed the following list of records relating to the case of Sandra Taylor, RN, Diane Sepeda, RN, Nancy Friesen RN vs. Lone Star HMA dba Dallas Regional Medical Center (DRMC) including, but not limited to:

1) Medical Records of the patients occupying beds 1-15 in the ICU on or about 5/24/07,
2) Plaintiffs' Original Petition, Cause No. 07-09797, August 24, 2007,
3) Defendants' Original Answers, Civil Action No. 3:207-CV-1931-M,
4) Scheduling Order, Civil Action No. 3:207-CV-1931-M, February 26, 2006,
5) Plaintiffs' first set and supplemental responses to interrogatories,
6) Defendants' answers and objections to Plaintiffs' first set of interrogatories.
7) Oral Depositions of Nancy Friesen (May 16, 2008); Sandra Taylor (June 17, 2008); Diana Sepeda (June 16, 2008); Barbara Welpton (August 7, 2008); PJ Kersey (August 7, 2008); Linda Iserman (August 8, 2008); and Rick Lijaucorn (August 8, 2008).
8) Plaintiffs' designation of testifying experts,
9) Plaintiffs' expert reports of Stephanie Tabone (May 28, 2008),
10) Stephanie Tabone's curriculum vitae,
11) Position descriptions and performance criteria for RN's and Charge Nurses at DRMC,
12) DRMC (Medical Center of Mesquite) employment records and correspondence between individual Plaintiffs and DRMC administrators and management,
13) Exhibits 1-62,
14) DRMC ICU Staffing Grid (9/2004) and the Charge Nurse worksheet from May 24, 2007, including assignments for 7a and 7 p nurses and staff prior to and after Plaintiffs clocked out;
15) Medical Records of all 14 patients present in the ICU on May 24, 2007,
16) DRMC Critical Care Policy and Procedure on Patient Assignments in Critical Care (10/02/2002),
17) Texas Health & Safety Code – Section 161.134:Retaliation Against Employees Prohibited (effective September 1, 1993 – present),
18) Texas Occupations Code (Nursing Practice Act) –
    Section 301.352: Protection for Refusal to Engage in Certain Conduct (effective May 20, 2005 – September 1, 2007),
    Section 301:401: Grounds for Reporting Nurse (effective May 20, 2005 – September 1, 2007),
    Section 301.412 : Reporting Immunity,

EXHIBIT A

Section 301. 413: Retaliatory Action (2005 Act),
19) Texas Administrative Code -
133.41: Hospital Functions and Services (effective September 1, 2002),
Rule 217.20: Safe Harbor Peer Review
Rule 217.11: Standards of Nursing Practice
Rule 217.12 : Unprofessional Conduct
20) Lunsford v. Board of Nurse Examiners for the State of Texas, No. 13548,

**Qualifications:**
I have been a Registered Nurse for 28 years and Certified Family Nurse Practitioner for 11 of those 28 years. My initial 17 years as an RN were spent in Critical Care areas of the hospital as staff and management. I am currently employed fulltime as a clinical instructor and lecturer for the nursing program at Harris College of Nursing and Health Sciences, Texas Christian University. My primary duties have been in the Adult Medical-Surgical and Acute Intensive Care clinical settings for the past 8 years in three Fort Worth area hospitals in ICU, PCU, ER, and M/S settings.

As a result of my training and experience, I am familiar with the fundamental standards of nursing care, practice and protocols in the hospital setting. I have a working knowledge of the Texas BNE and NPA rules and regulations governing nursing care in the state of Texas. I have knowledge of the accepted nursing and medical standards of care and practice for the diagnosis, care and treatment of hospital patients, including patients within the settings mentioned in this case. Additionally, I have admitted and cared for acutely ill patients as a nurse practitioner for 2 groups of hospitalists in Fort Worth and Weatherford hospitals. The following is my written report including my opinions on the data reviewed, the events involving the plaintiffs and defendents leading up to, on, and subsequent to May 24th, 2007 and related to the outcomes of these events and the plaintiffs' termination of employment at DRMC.

**Authored publications within the preceding ten years:** none
**Fee schedule for expert opinion and services:**
Consult/ Review/ Written Reports and Expert Opinion -$125/ hour
Transportation time -$75/ hour
Deposition - $200/ hour
Trial Testimony - $250/ hour
**Expert trial testimony or deposition within the preceding 4 years:** none

**Summary of Facts and Events:**
- August 2006, Sandra Taylor wrote to the CEO, R. DeBlasi, regarding her concern and dissatisfaction with management and staffing issues in the ICU at DRMC.
- Fall 2006, a routine unit meeting between ICU manager L. Iserman and staff included some discussion of staffing ratios among other agenda items.
- Policy and procedure of staffing ratios, states "usual" ratio of 2:1 and 1:1 based on acuity, and clearly states that these are general guidelines. The acknowledgment of assignments of greater than 2 patients in this ICU is evident by the Triple Log and depositions.

- Triple Log established prior to January 2007 reflects that most full time, part-time, and prn staff take rotational turns in caring for 3 patients in the ICU and that plaintiffs had participated in this duty prior to May 24th, 2007.
- The plaintiffs were actively engaged in promoting legislation introduced to the Texas legislature prior to the events that took place on May 24th, 2007, that would limit staffing in ICU's in Texas to 2:1 and they were recognized as having an adversity to taking more than 2 patients after the Fall of 2006.
- On May 24, 2007, all three of the plaintiffs refused assignments that might have involved caring for 3 patients, though it is noted that Ms. Sepeda and Ms. Friesen were never assigned three patients. When offered, they refused to invoke Safe Harbor, notified their supervisors of this refusal and left the ICU without receiving report or assessing the situation or any of the patients that might have been assigned as a two or three patient load during their scheduled shift. They did not offer help or support to care for the patients prior to leaving or prior to having replacements for them recruited.
- Some of the staff stayed over from the previous 12 hour day shift to assist the other night shift staff to care for the 14 patients to be cared for in the ICU. After the plaintiffs left their posts, additional staff were called in by the supervisor, P.J., to take over care from the day shift workers that stayed over. Linda Iserman came into to assess the situation and individual assignments, thus securing her unit staff and patients were safe.
- From review of the medical records, the initial 3 patient assignment refused by Sandra Taylor included a patient that was admitted to PCU on 5/21/07 presumably due to lack of beds on that unit and the other two patients showed no significant instability.
- Depositions, documentation of the events, and meetings with all three plaintiffs subsequent to their leaving DRMC on the evening of May 24, 2007, revealed their opposition to taking 3 patients ever again in the ICU.
- On June 4th, 2007, the plaintiffs were notified by HR that their employment was terminated.

**Opinions**
On the night of May 24th, 2007, the plaintiffs stated clearly that they were refusing 3:1 assignments. After the events on the May 24th, the plaintiffs later cited the need for safety of the patients, as being the reason that a 3:1 ratio was not acceptable to them. However, the assessment of patients in the unit on the evening of May 24, 2007 did not take place prior to the plaintiff's decision to clock out and leave the unit without appropriate replacement staff to care for the patients that remained under the care of the day shift nurses, charge nurses, house supervisor, and other staff remaining.
Minimum standard of practice for nurses conforming to the Texas Nurses Practice Act (TNPA) requires that nurses implement measures to promote a safe environment for their clients and others and collaborate with members of the health team in the interest of the client's health care. Additionally, a nurse always has a duty to his/her clients/patients to assure that they are safe. Prior to taking report, asking for details about the staffing or the patients assigned, plaintiffs refused to take a 3 patient assignment and notified their

supervisors of this. The standard should not be misinterpreted in this case to mean that the plaintiffs' notification of the supervisor prior to leaving was adequate, especially considering their retrospective statement alleging the assignment was unsafe.

The plaintiff's certainly had a right to reasonably refuse a patient assignment if they had fully assessed the patients and situation as being unsafe. The standard of care upon reporting for scheduled duty as an RN in any ICU is for the nurse to take report from the previous nurses caring for all patients for whom they are to accept care responsibilities. Reports between shifts of nurses are generally routine and regimented in all ICU's to encompass factual information about the status and care needs of the patient and their families. Sandra Taylor did not carry out a reasonable assessment of the initial patient assignment posted, nor did the other 2 plaintiffs. On the contrary, all the plaintiffs refused any 3 patient assignment on the evening of May 24, 2007. The initial 3 patient assignment that would have been Sandra Taylor's, was certainly reasonable from the review of the medical records and depositions of the staff reviewed to date. The other two plaintiffs, in actively refusing any potential 3:1 assignment, also did not have a reasonable basis for assuming that it was unsafe based solely on the numerical ratio. Additionally, there was no indication that the initial 3 patient assignment was beyond the capability or scope of practice of Ms. Taylor. The duties of charge nurse overseeing all staff working within the ICU, more often than not necessitates taking a lower, less acute patient load. The staffing numbers of 7 nurses:14 patients the night of May 24th, 2007 prior to the plaintiff's departure, including one 1:1 and one 3:1, were adequately within normative and safe ratios based on the acuity of the patients present in the unit and the assignments generated.

The law in Texas, the TNPA, and the policies, procedures, guidelines, and expectations in any ICU that I have been exposed to does not support a strict limit of 2:1 ratio of patients to nurses. The usual assignment of 2:1, in general, allows for ICU patients and the team of nurses caring to be able meet multiple needs of all patients in the unit, and is an ideal ratio in most acute ICU settings, but certainly not an absolute. The expectation of rotationally taking turns and cooperating as a team in caring for a reasonable 3 patient assignment was not only a known fact in the ICU at DRMC, but is commonly seen in all of the hospitals that I have worked at and had students in under my supervision. A patient assignment of 3:1 or even more in the ICU therefore, cannot generally be stated or considered an unsafe assignment in and of itself.

The Safe Harbor Peer Review, a rule and provision of the TNPA, was created to protect nurses and allow them to refuse assignments that they judge as unsafe. Created to help protect patients and nurses, this NPA rule allows the nurse the right to professionally communicate a potentially unsafe situation and to either engage in the care assigned or refuse care altogether. In this case, the plaintiff's chose not to follow this NPA rule, which would have allowed them to clearly communicate what might have been unsafe, had they actually received report and assessed the situation. Additionally, the plaintiffs would have still been able to refuse the assignment and still could have left, thus allowing for the Peer Review process to be carried out and attention brought to what they later claimed were potentially unsafe assignments. Objective peer review of the circumstances of declaring an unsafe assignment under Safe Harbor forces the hospital to assess the safety of the assignment.

**Summary and Conclusions**

The ideal ratio of a 2:1 nurse to patient assignment in the ICU is designed to allow flexibility in caring for the immediate needs of individual patients and the total needs of the unit and is commonly flexed to meet those needs. Teamwork and mild deviations of this usual ratio occur on a daily basis in ICUs to allow for caring for acuity, changes in status, and safety of all patients in the specific unit. The patient acuity assessed in the patient population present on the evening of May 24, 2007, in my opinion as an ICU nurse and nursing instructor over the past 28 years, would have been safely staffed had the plaintiffs accepted their initial assignments.

Under reasonable conditions assessed by qualified nurses, an assignment of three or more patients to one nurse in any ICU cannot be judged as unsafe based on the numerical ratio alone. In this case, the plaintiffs did not meet the minimum standards of practice, care, or duty in attempting to assess the patient status and acuity prior to refusing an actual or potential numerical assignment of 3:1. Refusal by the plaintiffs of expected duties and responsibilities of employment and as nurses in such an abrupt and unreasoned fashion created an insecure environment in which to provide safe care to the population of patients served at DRMC, or any patient care setting for that matter, in which patients or people are considered vulnerable.

The plaintiffs did not meet the minimum standard of care in properly assessing their potential assigned patients or receiving a thorough report on which to make a reasonable refusal of the assignment. Had the plaintiffs truly assessed the assignments as being unsafe, the utilization of the Safe Harbor ruling stipulated under the NPA, would have allowed them to not only refuse the assignment, but would have allowed the hospital to be notified in a professional manner of the plaintiffs' concerns for patient safety and a formalized Peer review process to be carried out.

I reserve the right to amend this report, as additional information is made available to me.
Respectfully submitted,

Linda Martin RN, MSN, CFNP
Home (817) 924-5894; Cell (817) 721-5495