UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SANDRA TAYLOR RN, <br> DIANA SEPEDA RN, <br> NANCY FRIESEN RN, <br><br> Plaintiffs <br><br> v. <br><br> LONE STAR HMA, LP <br> d/b/a DALLAS REGIONAL MEDICAL CENTER, <br><br> Defendant. | § § § § § § § § § § § § § § | CIVIL ACTION NO. <br> 3:07-CV-1931-M |

# DEFENDANT'S MOTION TO STRIKE
# JOHN A. SWIGER AS AN EXPERT AND BRIEF IN SUPPORT

Mike Birrer
  State Bar No. 00783662
  mbirrer@ccsb.com
Rachel E. Mascorro
  State Bar No. 24060233
  rmascorro@ccsb.com
CARRINGTON, COLEMAN, SLOMAN
  & BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone: (214) 855-3000
Facsimile: (214) 855-1333

*Attorneys for Defendant Lone Star HMA L.P.*

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................1

II. EVIDENCE..................................................................................................................2

III. SWIGER'S OPINIONS ................................................................................................2

    A. Swiger's Reports on Lost Earnings................................................................2

        1. Taylor's Purported Lost Earnings.......................................................2

        2. Sepeda's Lost Earnings......................................................................4

    B. Swiger's Report on Lost Benefits ..................................................................5

IV. ARGUMENTS AND AUTHORITIES..........................................................................5

    A. Swiger's Testimony is Inadmissible Under Rule 702....................................5

        1. Standards for Admissibility of Expert Testimony. .............................5

        2. Swiger's Opinions and Testimony on Economic Loss Are Not Reliable. ..............................................................................................6

            i. Taylor's Economic Loss. ........................................................6

            ii. Sepeda's Economic Loss .......................................................7

        3. Swiger's Testimony on Benefits Is Neither Reliable Nor Relevant. ............8

            i. Swiger's Benefits Calculation is Unreliable. ..................................8

            ii. Swiger's Benefits Calculation is Not Relevant..............................9

## TABLE OF AUTHORITIES

**CASES**

*Am. Tourmaline Fields v. Int'l Paper Co.*,
  1999 WL 242690 (N.D. Tex. Apr. 19, 1999) ................................................................. 5-6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ....................................................................................................... 6, 9

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................................ 6

*Mathis v. Exxon Corp.*,
  302 F.3d 448 (5th Cir. 2002) .............................................................................................. 5

*Matthews v. A-1, Inc.*,
  748 F.2d 975 (5th Cir. 1984) .............................................................................................. 8

*Pearce v. Carrier Corp.*,
  966 F.2d 958 (5th Cir. 1992) .............................................................................................. 9

*United States v. Downing*,
  753 F.2d 1224 (3d Cir. 1985) ............................................................................................. 9

*West v. Nabors Drilling USA, Inc.*,
  330 F.3d 379 (5th Cir. 2003) .............................................................................................. 7

**OTHER AUTHORITIES**

FED. R. EVID. Rule 702 ................................................................................................. 1, 5-6, 9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SANDRA TAYLOR RN, <br> DIANA SEPEDA RN, <br> NANCY FRIESEN RN, <br><br> Plaintiffs <br><br> v. <br><br> LONE STAR HMA, LP <br> d/b/a DALLAS REGIONAL MEDICAL CENTER, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § CIVIL ACTION NO. <br> § 3:07-CV-1931-M <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

**DEFENDANT'S MOTION TO STRIKE
JOHN A. SWIGER AS AN EXPERT AND BRIEF IN SUPPORT**

### I. INTRODUCTION

Plaintiffs Sandra Taylor and Diana Sepeda proffer John A. Swiger as an expert on their purported economic losses related to their termination. But Plaintiffs cannot show that Swiger's testimony is reliable or relevant. The fact that he uses different "methodologies" to calculate the lost earnings of two plaintiffs who occupy remarkably similar circumstances is a red flag that his opinions and methods are unreliable. To compound that problem, Swiger includes a healthy dose of speculation in coming up with his numbers. His views on lost benefits are based on the unreliable lost wage calculations, making them equally unreliable. Moreover, he utterly fails to connect the purported lost benefits to actual "out of pocket loss," as is required by the law, making his testimony on this issue irrelevant. Because his testimony fails to meet the reliability and relevance requirements of FED. R. EVID. 702, it must be stricken.

## II.   EVIDENCE

The following evidence in support of this motion is included in the Appendix filed contemporaneously herewith:

1. The report of John A. Swiger, Ph.D., setting forth alleged "Present Value of Lost Earnings and Benefits of Ms. Diana Sepeda" ("Sepeda Report");

2. The report of John A. Swiger, Ph.D., setting forth alleged "Present Value of Lost Earnings and Benefits of Ms. Sandra Taylor" ("Taylor Report");

3. Excerpts and exhibits from the deposition of John A. Swiger ("Swiger Dep.").

## III.   SWIGER'S OPINIONS

### A.   Swiger's Reports on Lost Earnings

Swiger has prepared two separate reports: (i) "Present Value of Lost Earnings and Benefits of Sandra Taylor" and (ii) "Present Value of Lost Earnings and Benefits of Diana Sepeda." *See* Swiger Dep. Exhs. 4, 5 (Taylor Report)/App. 0032-42 and Exh. 6 (Sepeda Report)/App. 0043-51. Although Taylor and Sepeda both were terminated on the same date from the same job positions, Swiger used different methodologies in calculating their lost earnings.

#### 1.   Taylor's Purported Lost Earnings

In 2007, Taylor worked as a nurse for both Defendant and THI Hospital. According to Swiger, Taylor voluntarily resigned from THI immediately after her termination from Defendant allegedly because "someone that worked at Mesquite . . . also worked at THI [and] [f]or whatever reason, she didn't feel comfortable there." Swiger Dep. 34:18-22/App. 0008; *see also* Swiger Dep. 37:20 to 38:8/App. 0011-12. Thus, as of approximately June 2007, Taylor was no longer employed with either Defendant or THI.

**Defendant's Motion to Strike John A. Swiger As An Expert and Brief in Support – Page 2**

To determine the amount of income Taylor allegedly would have received absent her termination from Defendant, Swiger attempted to "annualize" the pay Taylor received at Defendant *and* at THI from January 1 to June 4, 2007. *See* Swiger Dep. 34:5 to 36:4/App. 008-10. First, he reasoned Taylor earned $34,974 with Defendant from January to June 4, 2007. To annualize that amount, he multiplied it by a fraction in which the numerator was roughly the number of calendar days in a year (360) and the denominator was the number of 2007 calendar days during which Defendant employed Taylor (154). Swiger Dep. 29:11 to 30:23/App. 0004-05. That fraction multiplied by Taylor's 2007 actual income with Defendant equaled $81,754. Swiger Dep. 30:20-23/App. 0005.

Swiger then moved on to "annualize" Taylor's THI compensation, but did not bother to employ the basic rigor of using a comparable fraction representing the percentage of days actually worked there. Instead, Swiger took roughly the amount of money Taylor earned at THI[1] through June 4, 2007 ($11,000), and doubled it. Swiger Dep. 35:11-16/App. 0009. In other words, Swiger speculated that, if Taylor had not voluntarily quit THI, Taylor would have made another $11,000 for the remaining seven months of 2007. Swiger added these "annualized" numbers to conclude Taylor would have earned $104,000 in 2007 but for her termination. The chart below reflects the math:

| Taylor's "Annualized" 2007 Income | | |
|---|---|---|
| **Employer** | **Annualization Calculation** | **Total** |
| Defendant Hospital | $ 34,972 x 360/ (# of days in year) 154 (calendar days as of termination) | $ 81,754 |
| THI Hospital | $ 11,000 x 2 | $ 22,000 |
| **Total** | | $103,750 (rounded to $104,000) |

---

[1] Swiger never explains why damages from Taylor's voluntary departure from another job should be attributable to Defendant.

**Defendant's Motion to Strike John A. Swiger As An Expert and Brief in Support – Page 3**

Swiger then subtracted Taylor's actual 2007 income ($81,783) from her hypothetical "annualized" 2007 income ($104,000). This equaled $22,217, which Swiger claimed is Taylor's 2007 economic loss attributable to Defendant.

Swiger intends to subtract Taylor's actual 2008 income from the hypothetical $104,000 to determine lost income for 2008, and he intends to use that number as the amount Taylor will lose every year through 2012 (adjusted for present value).[2] Accordingly, Taylor's so-called "annualized 2007 income" from Defendant and THI is critical to Swiger's entire methodology.

2. **Sepeda's Lost Earnings**

Contrary to the "methodology" used for Taylor, Swiger did not "annualize" Sepeda's 2007 income as of her termination date. Instead, Swiger speculated that Sepeda's 2006 gross income arising from three separate hospitals equaled the amount of money Sepeda would have earned annually if she had not been terminated on June 4, 2007. Swiger Dep. 58:25 to 59:25/App. 0021-22; Sepeda Report, pp. 2-3/App. 0044-45. The chart below reflects Sepeda's 2006 income from the three hospitals:

| Sepeda's 2006 Income – Sepeds Report Table II | |
|---|---|
| Defendant | $75,324 |
| THI | $10,763 |
| Lakepoint | $7,332 |
| **Total** | $93,419 |

Swiger then subtracted Sepeda's actual 2007 income ($77,657) from her 2006 actual income ($93,419) to determine economic loss for 2007. This equaled $15,762. Sepeda Report, Table III /App. 0046.

---

[2] When preparing the Report, Swiger only had actual income through May 10, 2008. Accordingly, Swiger used those numbers when preparing his Report, but Swiger apparently will update Taylor's actual income with her 2008 W-2s when they are available.

**Defendant's Motion to Strike John A. Swiger As An Expert and Brief in Support – Page 4**

Swiger intends to subtract Sepeda's actual 2008 income from her 2006 actual income to determine economic loss for 2008 attributable to Defendant. Swiger apparently intends to use the 2008 loss as the amount Taylor will lose every year through 2012 (adjusted for present value). *See* Sepeda Report Table III/App. 0046.[3] Accordingly, the applicability of Sepeda's 2006 income at three separate hospitals is critical to Swiger's calculation of alleged economic loss after June 2007.

**B.     Swiger's Report on Lost Benefits**

Swiger speculates that lost benefits will equal 15% of total alleged economic loss. Swiger Dep. 47:15-18/App. 0014.[4] Swiger himself is "troubled" by this calculation which uses a self-described "cookie-cutter formula." Swiger Dep. 47:20 to 48:6/App. 0014-15. When asked how he picked 15%, Swiger responded, "I didn't have a whole lot of information here in terms of what her benefits were. I didn't have her personnel file." Swiger Dep. 49: 19-25/App. 0016. Swiger claims he used a "conservative" percentage from a statistical abstract, but concludes "I think there are better ways of doing it, but they involve a lot more time." Swiger Dep. 51:22-24/App. 0018; *see generally* Swiger Dep. 51:7-24/App. 0018.

### IV.     ARGUMENTS AND AUTHORITIES

**A.     Swiger's Testimony is Inadmissible Under Rule 702.**

   **1.     Standards for Admissibility of Expert Testimony.**

The proponent of expert testimony has the burden of establishing by a preponderance of the evidence that (1) the expert is qualified, (2) the evidence is reliable, and (3) the evidence is relevant. FED. R. EVID. 702; *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002); *Am.*

---

[3] At the time Swiger completed his report, he used actual income through May 10, 2008. At the time of trial, Swiger would have actual income for 2008.

[4] Swiger used this 15% method for both Taylor and Sepeda. Swiger Dep. 53: 16-19/App. 0019.

**Defendant's Motion to Strike John A. Swiger As An Expert and Brief in Support – Page 5**

*Tourmaline Fields v. Int'l Paper Co.*, 1999 WL 242690, at *2 (N.D. Tex. Apr. 19, 1999) (Fitzwater, J.). Plaintiffs cannot establish Swiger's testimony is reliable or relevant.

### 2. Swiger's Opinions and Testimony on Economic Loss Are Not Reliable.

This Court must assess the reliability of expert testimony — "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993); *Am. Tourmaline Fields*, 1999 WL 242690, at *2. An expert must employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," and expert knowledge must "connote[] more than subjective belief or unsupported speculation." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *Daubert*, 509 U.S. at 590. Rule 702 requires that expert testimony be "the product of reliable principles and methods" and that experts apply "the principles and methods reliably to the facts of the case." FED. R. EVID. 702.

Swiger used two different methodologies in calculating the amount of money he assumed Taylor and Sepeda would have made but for their terminations. Because both are unreliable, Swiger should be stricken as an expert witness and his testimony excluded.

### i. *Taylor's Economic Loss.*

Taylor cannot show Swiger used any reliable methodology to hold Defendant accountable for income she lost due to her termination from Defendant and her voluntary resignation from THI. First and foremost, Swiger's methodology necessarily is premised on the assumption that Taylor wants to maintain permanent full-time and part-time employment. Yet, Taylor testified that "I'm not going to apply for employment – permanent employment anywhere until all of this [lawsuit] is settled." Taylor Dep. 26:13-23 / App. 0057. Therefore, Swiger's

**Defendant's Motion to Strike John A. Swiger As An Expert and Brief in Support – Page 6**

speculation that Taylor is seeking permanent full-time and part-time employment is not connected to the actual facts of this case.

Even setting aside Taylor's departure from the permanent job market, Swiger's methodology ultimately holds Defendant responsible for $22,000 per year attributable to Taylor's voluntary resignation from THI because he includes that sum in total income Taylor allegedly should have earned annually "but for" her termination from Defendant. This is unsupportable especially in light of Swiger's statement that "I'm not blaming her termination at Mesquite for the fact that she's not working at THI." Swiger Dep. 39:5-7/App. 0013. But, Swiger's calculations hold Defendant responsible for lost income from THI. Far from increasing economic loss, any reliable methodology would likely decrease Taylor's recoverable losses based on her voluntary resignation from alternative employment. *Cf. West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003) (a plaintiff seeking back pay for alleged employment discrimination has a duty to mitigate her damages).

  *ii. Sepeda's Economic Loss*

No reliable methodology supports Swiger's conclusion that Sepeda's total gross income from 2006 equals the amount she would have earned annually after June 4, 2007. At best, this is Swiger's guesswork that the numbers would be "about the same." Three problems with this speculation stand out:

(1)  Unreimbursed Expenses -- Sepeda's 2006 tax return showed that she had unreimbursed employee business expenses equal to $7,905. Swiger Dep. 66:6 to 67:3/App. 0025-26. Swiger agreed that to determine true economic results gross income must be reduced by unreimbursed expenses. Swiger Dep. 70:10-15App. 0029. Yet, Swiger ignored that principal and used 2006 gross income as the amount Sepeda should recover as economic loss for the five years after June 4, 2007.

**Defendant's Motion to Strike John A. Swiger As An Expert and Brief in Support – Page 7**

(2) THI Income -- Swiger included Sepeda's 2006 gross income from THI as part of the income she would have received from June 4, 2007 forward if Defendant had not terminated Sepeda. But Sepeda did not work at THI in 2007; therefore, Sepeda left THI at least five months prior to her termination from Defendant. *See* Sepeda Report, Table II/App. 0046; Swiger Dep. 62:13 to 63:24/App. 0023-24. There is no legal or economic basis to conclude that Sepeda's loss of gross income from THI should be attributable to Defendant for any period of time (and certainly not for five years).

(3) Lakepoint – Swiger included Sepeda's 2006 gross income from Lakepoint in the amount of money Sepeda should have received for five years following her termination. Yet, Swiger conceded Sepeda voluntarily left Lakepoint in 2007 to go to New Mexico. Swiger Dep. 57:9-16/App. 0020. There is no legal or economic basis to conclude that Sepeda's loss of gross income from Lakepoint should be attributable to Defendant for any period of time (and certainly not for five years). *See Matthews v. A-1, Inc.*, 748 F.2d 975, 978 n.5 (5th Cir. 1984) (affirming trial court's decision to terminate backpay period and recognizing that, although trial court's reasoning focused on plaintiff's beginning to earn a higher income as of that date, the cessation date was also correct because it was the date plaintiff resigned from her previous position voluntarily and relocated to another city).

Absent reliable methodology to determine economic loss allegedly attributable to Defendant, Swiger's opinions and testimony on Taylor's economic loss and Sepeda's economic loss should be excluded.

3. **Swiger's Testimony on Benefits Is Neither Reliable Nor Relevant.**

*i. Swiger's Benefits Calculation is Unreliable.*

Swiger calculated lost benefits by taking a percentage of economic loss. As shown above, Swiger's conclusions on economic loss are unreliable. Therefore, any calculation of lost

**Defendant's Motion to Strike John A. Swiger As An Expert and Brief in Support – Page 8**

benefits which is premised on Swiger's unreliable economic loss calculations is also unreliable. Further, Swiger concedes that his fifteen percent methodology was used because "the better ways [of calculating benefits] . . . involve a lot more time." Swiger Dep. 51:22-24/App. 0018. That admission virtually concedes unreliability.

### ii. *Swiger's Benefits Calculation is Not Relevant.*

Swiger's opinion and testimony on lost benefits also is irrelevant because it will not assist the jury in determining a fact in issue. *See Daubert*, 509 U.S. at 591 ("An additional consideration under Rule 702 — and another aspect of relevancy — is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.") (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). In employment lawsuits, plaintiff must prove actual out-of-pocket loss to recover damages for benefits. *See Pearce v. Carrier Corp.*, 966 F.2d 958, 959 (5th Cir. 1992). Swiger's calculation of lost benefits is not connected to any actual loss as required; therefore, Swiger's lost benefits opinions which are not connected to actual loss are not relevant.

WHEREFORE, Defendant respectfully requests that the Court grant this Motion and exclude the opinions and testimony of John A. Swiger from the trial of this case and grant such other and further relief to which it may be entitled.

Respectfully submitted,

/s/ Mike Birrer
Mike Birrer
  State Bar No. 00783662
  mbirrer@ccsb.com
Rachel E. Mascorro
  State Bar No. 24060233
  rmascorro@ccsb.com
CARRINGTON, COLEMAN, SLOMAN
  & BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202
Telephone: (214) 855-3000
Facsimile: (214) 855-1333

*Attorneys for Defendant Lone Star HMA L.P.*

## CERTIFICATE OF CONFERENCE

On December 19, 2008, Liz Higginbotham, counsel for Plaintiffs Sandra Taylor and Diana Sepeda indicated that Plaintiffs oppose this Motion.

/s/ Mike Birrer

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of December, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiffs Sandra Taylor and Diana Sepeda, R.N., Elizabeth L. Higginbotham, Esq., 106 E. 6th Street, Suite 900, Austin, Texas 78701, and counsel for Plaintiff Nancy Friesen, Maria Wormington, Wormington Law Group, 207 East Lamar Street, McKinney, Texas 75069.

/s/ Mike Birrer

830715v.2